Mr. Metlitsky. Thank you, Your Honor. Anton Metlitsky for Illinois Union. May it please the Court. The policies under which plaintiffs seek coverage from Illinois Union through a direct action include arbitration provisions requiring, quote, any dispute, controversy or claim arising out of or relating to this policy, which undoubtedly covers this action, to be arbitrated in London. When a case like this one is subject to arbitration, Section 3 of the Federal Arbitration Act requires district courts to enter a stay. There is no discretion in that regard. Yet the district court here denied Illinois Union the chance to even file a motion seeking a stay on the ground that it would be inefficient in the context of an MDL for a party to move for an FAA stay without the consent of the MDL's lead counsel, who in this case denied Illinois Union consent. That cannot be right. Counsel, can I ask a preliminary question that I don't think either side mentioned? The actual order that's being appealed is an order denying leave of court to file a motion to stay? Is that right? Yes. Do we have appellate jurisdiction over an order denying leave of court? Yes, Your Honor, because I think the cases from all over the country make clear that orders that have the effect of denying a stay fall under Section 16. Like this? Yeah, because otherwise a district court could just say no one is allowed to file motions to compel arbitration or motions to stay pending arbitration, then no one could do anything about it. There may be lots of cases around, I think there are a handful of circuits. I don't think there's a Fourth Circuit one, but your argument is that this is the functional equivalent of a denial of a stay and we should treat it that way and that should give us jurisdiction. Right. There is no Fourth Circuit case that I'm aware of. There's no controversy on the point, I don't think. I don't see how the rule could be otherwise if the rule were otherwise, the court would have mandamus authority. If it doesn't have either one of those, then the district court could just prevent people from... You could in theory incur the ire of the district court by filing a motion to stay without leave of court, but that seems, that's your point. Yeah, exactly right. That's exactly the point. And then the district court could, in that case, strike the motion, in which case the order would be a motion, like an order striking the motion and we'd be in the same spot. So I think what we have is an order that in effect denied a motion to stay under Section 3 of the FAA and I think the question basically is, can a district court in the MDL context, outside the MDL context, for purposes of running litigation efficiently, prevent parties from filing those kinds of motions? I think the answer is no to that generally, forgetting even about the arbitration context. There are cases, for example, the opioid litigation. Judge Kethledge has a lengthy opinion on this in the Sixth Circuit. He explains that multi-district litigation is not consolidation. It is a bunch of individual actions that are litigated together for efficiency purposes, but they don't lose their individual character. And so district courts can do all sorts of things to streamline the litigation, but the one thing they can't do is prevent parties in individual cases from seeking relief that they're authorized to seek under the federal rules or a fortiori under a federal statute like the FAA. And that's exactly what happened here. Have you ever encountered this problem, this issue before in the MDL context? I have not encountered the problem with respect to arbitration. I've just never seen a case like that. It seems like it's a place where the FAA comes to meet the MDL, and what do you do? Well, so I think this is actually an a fortiori case for us, because the general rule is that if you have a right to file a motion under the federal rules of, like for example, a motion to dismiss, a district court can't tell you that you're not allowed to file it in an individual MDL case. The district court can put in time limits and meet and confer requirements and all sorts of stuff like that, but if you... Should that motion go back to the original district court, or should it stay with the MDL? Well, so that's within the district court's, it's not exactly within the district court's discretion, it's within the district court's discretion to ask the MDL panel to send it back to the transferor court. So if there are issues in individual cases that have been transferred to a multi-district litigation, and it turns out that those individual issues really aren't common, they're strange, they're sort of different than what the district court is dealing with, the district court can ask the MDL panel to send it back. Now, I don't see why you would do that in this case, because I think the underlying substance of the motion for a stay is very simple, but like the primary question here is whether the district court can just say, I'm not allowing you to file this motion, and I think it's very clear to that that the answer is no. And just to finish the answer to your question, Judge Berner, I think the FAA context makes it a fortiori because as the Supreme Court has held over and over and over again, the FAA does not yield to other statutes unless there's some clear statement in those other statutes that would make it yield. And so certainly it wouldn't yield to the MDL provision, which is not a provision for efficient litigation, but the MDL provision doesn't purport to take away any rights at all from a party, certainly not the right to arbitrate. I think the question is whether the Wisconsin Direct Action statute somehow in reverse preempts the FAA. Not suggesting that I think it does, I think that that's the question, and that's not really a question for the MDL court. Well, so I think there are two questions presented on appeal. I think that's the second one. Once you have decided that we should be allowed to make this motion, which I think is a pretty easy question, then the question is, what happens? Like, do we win the motion? And then I think the answer to that question is yes. There is no plausible argument, I think, for McCarran-Ferguson reverse preemption. The district court, we could deal with that, or we could ask the district court to deal with that in the first instance? That's right. That's right. I'm just saying that it doesn't seem like a very hard question to me because, as we've cited in our briefs, Wisconsin allows arbitration of insurance disputes and the direct action provision, all that does is it allows a plaintiff to essentially step into the shoes of the policyholder. But I don't know of any jurisdiction that doesn't follow the general equitable estoppel rule that this court recognized in an international paper, which is when you're trying to get the benefits of the contract, you also have to live with the contract's obligations. So it would just make no sense. So it sounds like you're not, I mean, we've got, I guess, the district court first ruled that you didn't seek the consent for the lead counsel and said something to the effect that that alone is a basis to deny the motion. It then goes on to acknowledge that the request came later and then says it's inefficient. Right. Do you, it doesn't sound like you have any qualm that in an MDL there can be procedural requirements like seeking consent from parties and things like that. In other words, the deal of, well, they're adverse to me, doesn't let you avoid procedural requirements. I mean, that may make sense kind of intuitively, but the district court's entitled to put those sort of restrictions on when and how you do something. You agree with that? I agree with that. I mean, we, as we explained to the district court below in our motion, we didn't think that that rule applied in this case for several reasons, including because of the adversity. We have no qualms with rules that, you know, efficiency rules, including meet and confer rules and things like that, so long as the rules don't have the effect of preventing parties from making motions that are allowed to make. So if it stopped after the first kind of acknowledgement that you didn't do it and it was being hyper strict with the requirements and said, you know, now you can do it and you do it right, that's all, that'd be fine. Yeah, we would just refile our motion. The problem is what the district court said after that, which made clear that if we did refile the motion, yeah, the motion was denied. You know, there was an alternative ground and that ground can't be fixed by filing another motion because we're never going to get consent. So, you know, that's really the end of it and as your honor said, now the next question is, does the court, the court can decide the arbitration case question itself? And I would just pitch that the reason to do that is because of course there's direct appeal. So if it goes back, I think it's a very easy question, there's no reverse preemption here. And if the court doesn't decide that, that's fine, we'll make our motion below, but then the district court will either grant the motion or it will deny the motion. We'll be right back up here because there's a direct appeal under the FAA. So that's basically our position. If the court has further questions, happy to answer them. Otherwise, I'll reserve the remainder. Thank you, your honor. Thank you, counsel. Mr. Cronin. Good afternoon. May it please the court, my name is Andrew Cronin. I represent the appellees city of Wazoo and the Bouvier plaintiffs. And plaintiffs here request that this court dismiss the present appeal for two reasons. The first reason is that the MDL court's denial of Illinois Union's motion for leave was a valid exercise of its case management discretion. And the second reason is that the only issue that is properly before this court on appeal is the MDL court's ruling denying that motion for leave. It is not the merits of the motion to stay, which the MDL court has not taken up, that the parties have not briefed and that it has not ruled on. Focusing first on the MDL court's ruling denying Illinois Union's motion for leave to file, it is certainly within, as I think counsel acknowledged, the MDL court's broad case management discretion to impose and enforce a duty to consult with lead counsel before filing a motion for leave with the court. Again, counsel I believe conceded that imposing meet and confer requirements before filing a motion is a valid exercise of that discretion. And that's effectively what CMO 2A is. It's a meet and confer requirement just not with opposing counsel, in this instance with lead counsel for your side. And I do want to correct one thing that counsel said, which is this idea that defense co-lead counsel necessarily has adverse interest to Illinois Union. Defense co-lead counsel represents all of the defendants in the MDL, not just the manufacturer defendants. There are different subgroups, and there is a manufacturer defendant subgroup. But Illinois Union is not unique in that it's a party on the defense side that may have interests that don't necessarily align with the manufacturers. The U.S. government is among the defendants and has to ask and consult with defense co-lead counsel when it wants to file motions. And so, I think here, you know, further, the requirement in CMO 2A to consult with lead counsel is appropriate because it allows lead counsel. You can, I'm not trying to be rude here, he's basically saying that, I thought he said that he's not, doesn't have an issue with the fact that there's those sort of requirements. He seemed to be arguing for something he's conceded. Unless I'm missing something. Well, I mean, I don't think he's conceded that it was proper for the court to deny the motion for leave here. On the second basis, yeah. Which is this idea that it would be sort of an inevitability that the court would never. He's saying, he's saying the thing about meet and confer, you know, is not something he's really here for. He's here for the second part of the district court's order, where the district court says, I know he's done it subsequently, and I'm still denying leave because it's going to be inefficient. So I'm not going to allow you to make your motion. Well, I don't think we know that for certain for one thing. For another, this goes back to, you know, the MDL court's inherent authority to control when and how a motion is brought to bear. This is not, you know, the MDL court is tasked with addressing issues that are common to, you know, more than just one case or two cases, you know, within the MDL. That is the MDL's focus. And then those individual case-specific issues, that's when you remand back to the transferor courts to address those. And so I think it was, you know, and part of the reason why I think the MDL court relies on or imposes this duty to consult is that, you know, lead counsel is also tasked with ensuring that what is addressed in the MDL are these common issues, that that is the focus of the proceedings and not on, you know, while the cases don't lose their individual character for purposes of the pretrial proceedings that happen in MDL court, the focus is on these common issues and, you know, one-off, you know, issues that apply in just, you know, to one defendant in two cases, it may not be a priority for the MDL court to address that. It may not, but I mean, the district court seems to say that because lead counsel doesn't agree, aside whether you complied with it technically, because the lead counsel didn't agree, you know, you don't get to make the motions. And these MDLs, you know, apparently there's some, you know, you're precluded from doing that. I mean, I do think that the MDL court places a lot of weight into lead counsel's decision about whether or not to approve or not approve a motion, but I think the entire reason for the motion for leave mechanism is that if lead counsel does not want to sign on to a motion, the court still wants to hear it, to hear reasons why it should allow the filing of that motion. So I don't think it's necessarily true that, you know, that lead counsel's refusal to approve a motion necessarily means that it's not going to be able to be filed. And I do think also So you don't think we, maybe I'm just missing something. I'm confused. Is it your view that we're, this is all preliminary, that they could go, you know, file their motion for a stay and we're all, we got the cart before the horse here? That there's, I mean, and you don't think the effect of the district court's order prevents them from moving to stay? I think it may prevent them from moving for a stay right now. I don't think it prevents them from moving for a stay indefinitely. I mean, there's 17,000 cases in this MDL. A lot of them present threshold issues that have to be put on the back burner so that the court can choose which issues to prioritize. And I'll give one example. The first common issue that the court in this MDL prioritized was the government contractor defense. And that required a lot of third party discovery by the United States government. Now the United States government presented threshold issues and the court said, no, you know, we need you to hold off on that so that we can do this discovery to address the government contractor defense because that is an issue that is, you know, common to most of the cases in the MDL and, you know, is really the type of issue that the MDL court is supposed to focus on in the first instance. And so, you know, really, and the idea of the mandatory nature of the stay, I mean, that only kicks in once the court determines that the issue is subject to arbitration. And there's been no determination by the MDL court that that's true. So, you  So if there was some ruling that made it clear that they were not going to get to file their motion to stay as the act seems to give them, would you agree that would be improper? No, I wouldn't because I don't think that it gives them an absolute right to file a motion to stay. What it does is say, what section 3 says is, if a court determines that an issue is subject to arbitration, then it has to impose a stay. Well, how's a defendant who's got an arbitration clause, what are they supposed to do? They want to, they say, I've got an arbitration clause, nothing in the MDL statute says you lose it. They're trying to move for a stay, and it looks like they're not being allowed to do that. Now, if the argument is, okay, this is just some timing thing, they're going to get to do it later, I mean, maybe that's an issue. Maybe that's what you're saying. But I'm trying to figure out, if effectively they're not going to be allowed to file their motion for stay and they're going to lose it, that would violate the statute. Do you agree with that? Well, I think if there was a universal prohibition against even seeking a stay, yeah, I think that that would be the case. But I don't think that's what we have here. I think we have, like you said, an issue of timing. He didn't say that, though. I mean, maybe that's right. Maybe the order just isn't flushed out enough and we don't know. I mean, he says lead counsel doesn't consent. MDLs involve a whole bunch of balls in the air. I actually have some understanding of that. But it doesn't indicate, yeah, the time's coming for that. And I'm setting this in order. As I read it, it's kind of the lead counsel's failure to consent means you don't get to file the motion. Am I wrong there? I mean, I don't think, I think the court can rely on lead counsel's decision about whether to approve a motion in deciding whether or not to grant a motion for leave. I don't think that it's necessarily guaranteed that just because lead counsel is not going to approve a motion that it, you know, that the court is somehow bound to then not allow them to file it. You know, I That's what they did here, right? That's what they, that's what they did here. But I think there are good grounds for that, which is, you know, again, I think CMO 2A was put in place to prevent, you know, motions that were filed for individual cases amongst the 17,000 that were not addressing issues that were common to, you know, either the, you know, well, there's no issues that apply to the whole docket, but at least a large portion of the docket, these issues, again, that are common to a lot of the cases that the MDL court is tasked with resolving before it sends the cases back to the transferor courts to deal with the case-specific and individual issues. And so, you know, I think that, I think lead counsel, I think the MDL court, lead counsel's approval, sorry, refusal to approve that here is partly based on the fact that it knows that the MDL court does not want, you know, 150 motions to, individual motions to stay to get filed by different parties who feel like they have a right to arbitration. You know, what it wants and part of the reason for the duty to consult is if someone brings a motion to lead counsel, they have a duty if that, you know, motion is going to apply to other cases to file it all as one consolidated motion for efficiency purposes. I think that that duty also entails if, you know, lead counsel recognizes that this is a singular issue in one case, that it's not, you know, a, it is not a good use of the court and the party's resources to, you know, bring that issue to bear when there are still a number of issues that cut across a large number of cases that the court needs to address. Do you think the MDL regulatory scheme usurps the Federal Arbitration Act? No, I do not. I do not believe that, Your Honor. Well, it doesn't, does it? No. And also, did the individuals have a chance to seek or proceed with arbitration before their cases were transferred to the MDL? In other words, say, no, wait a minute, I don't want mine transferred. I want it right now. I want to be heard on arbitration, FAA. Do they have the obligation or was it just sort of fiat? You go there. I'm sorry, I don't know if I understand your question. What I'm saying is before they were transferred to MDL in that process, that scheme, did they have an opportunity to assert their rights under the Federal Arbitration Act before that was done? Or did they have to all go in that space you talked about? That's an easy question. They would have because, I mean, these cases were filed originally in state court, and then they got removed to federal court by the defendants, and then they were transferred to the MDL thereafter. They were transferred, right? Mm-hmm. Was there an opportunity to assert those rights, arbitration? Arbitration is a matter of time in terms of, you know, if you don't do it on a timely basis, you basically have, well, I'll wait until the jurors, in other words, is in panel or do I wait until a verdict and then you can get it changed by an arbitrator? Time is of the essence, right? Isn't it the essence of arbitration? But I think the timing matters to the extent, you know, I just want to be clear, it's not as though the MDL court is forcing Illinois Union or any of these other insurers to litigate their claims. The cases are, like many in this MDL, sitting there sort of waiting for this order of priority with how the court's going to address the issues to play out. So, you know, this is not, like, this is not depriving them of arbitration by forcing them to litigate these issues in the MDL. It's just saying, we're not going to take up your motion, you know, you're, we're not going to take up the arbitration issue and the state issue at this time. It means it's years later, right? I mean, it could be, you know, this MDL has been going on for quite a long time. That's why I say it could be years and more years. So, de facto, it's usurping the FAA, if not legally, isn't it? Well, I don't think it's preventing them from ever getting this, or ever seeking to vindicate their arbitration right. But if you have a right, and Congress has given you this right, and you're trying to exercise it, and it seems like you're saying, yeah, yeah, we're not eliminating that right. Just sit tight. You're going to get to do it. You know, and you're eight years later, and you're paying lawyers and doing all this stuff to, you know, to be part of this process that takes forever. I mean, it just seems like you're rendering what a mandatory obligation from Congress to be almost nothing. Well, again, Your Honor, I would disagree that it's a mandatory obligation, particularly in this case. Because, again, the stays only becomes mandatory once the court determines. But you're not letting him establish it. I mean, you're saying there's a condition to staying, that it's subject to arbitration. I mean, that would be resolved if, wouldn't it? Would the, I mean, that's bound up in the motion to stay. It's bound up in the motion to stay in the sense that. You're saying there's a preliminary issue, but you're not letting them, you know, present the preliminary issue. At this time. I got you. You know, and so, and I do think that this, you know, I disagree with counsel that I do think that there is a, you know, strong possibility that there is reverse preemption here. You know, counsel mentioned that Wisconsin law favors enforcing arbitration provisions in insurance contracts. I do not think that that is true. What it does, the policy in Wisconsin is to favor arbitration provisions that are approved by the insurance commissioner. And this provision at issue in this insurance policy was not approved by the insurance commissioner. I also think that the direct action statute itself, the purpose of that, as far as the Wisconsin insurance framework, is to provide a forum for those injured by the negligence of an insured of a general liability policy. A forum to actually litigate, you know, the coverage and to seek, you know, recovery in litigation in court and not to go to necessarily to arbitration. I mean, we did, you know, reference the Evans case where the Eastern District of Louisiana found that a similar direct action statute that was adopted in Louisiana reverse preempted the FAA and the arbitration provision in that case. And, you know, at the very least, you know, again, I don't think we're really there as far as like addressing the merits of the motion because the parties have not briefed, you know, the actual motion to stay. The court has not ruled on any motion to stay. But I do think that that at least leaves open the possibility that it is not as clear cut as counsel would like to suggest that, you know, that just the existence of this arbitration provision in the policy, it conclusively shows that this needs to go to arbitration. I think that is still something that is in dispute. And, you know, again, I think it is within the MDL court's case management discretion to say, okay, this is an issue that I'm going to need to address, that the parties will have to brief, that it's going to require an investment of time. But it only applies to one defendant in two cases. And I have a docket of over 17,000 cases that I'm trying to, you know, get to a point where I can start remanding cases to deal with these types of individual issues. So I, you know, again, while, you know, I think that the proper, frankly, the proper recourse here would have been for them to refile. And, you know, I know your honors may say, well, if they don't get the incentive of COLE counsel, you know, it's likely that the MDL court will deny that motion for leave. And, you know, that's probably fair, but we don't know, you know, for sure what's going to happen absent the procedural defect, you know, where they didn't actually consult lead counsel in the first instance before they filed their motion for leave. You know, and so I think to ask this court to effectively, you know, make a ruling on the motion to stay when that motion hasn't even been filed yet in the district court, I don't think that that would be, you know, is the proper relief here. And for that reason, that's why we think that the appeal should be dismissed and, you know, Illinois Union should refile this time in full compliance with CMO 2A. And, you know, if the motion for leave gets denied, you know, to me then you may be in the, you know, this is effectively a denial of the stay territory. I don't think we're there yet because of the procedural defect in the first instance that, you know, that they didn't consult with the COLE counsel before filing their motion for leave. Thank you. Thank you counsel. Mr. Cronin. Mr. Mitzke. Thank you, Your Honor. Just a few points. First of all, on the last point that we don't know what the district court would say if we refiled, we do know because the district court said so. Yes, I was thinking too. We didn't, we only had the first part, but we've got the second part. Exactly. On the point that there's been no determination, so no stay is warranted. Of course, the reason there's been no determination is because we weren't allowed to file our motion. On the point, the concession I think is that what the order does is prevent us from moving       for a stay now, maybe we'll be able to do it a few years from now or something like that. But the whole point of the Federal Arbitration Act is we have agreed that we don't have to be in court. We get to arbitrate this issue. They're the ones that suit us in a direct action under this policy. This policy has an arbitration agreement. The Federal Arbitration Act gives us the right now to go to arbitration and get a stay from the court. Let me ask you something there. The order doesn't say this. It just says, you know, without League Council's approval, you know, it's inefficient. I mean, if the order, if there was an order, or if the district court had said, you know, I'm going to hold that motion. You know, we've got to do this first, then that, then this. And so there's a sequencing of events that we do have to manage. I know that's not ideal for you, but I'm getting to it in this time or another. Is there anything wrong with that? So I think there might not be anything wrong with that with respect to some motions that you're allowed to file. I think there is something wrong with that with respect to a motion to stay pending arbitration because the whole right is not to be stuck in court. Right? That is the right under the Federal Arbitration Act. If you have been, if you have agreed to arbitrate, if you have an arbitration agreement, the reason... But if they stayed any proceedings against you, so you aren't part of discovery, you're not, you're just in a holding pattern, you know, for, to, while the court works through some of these things. Well, a stay is what we were asking for. So if they gave us a stay, then great. But without a stay, I mean, they serve discovery on us, I believe. So the idea that we don't have to litigate, I'm not sure what that means. I mean, we have an individual action. We are in court. We have the right to be in arbitration. It's sort of the end of the matter. Just quickly on this point that lead, I'm not sure this even matters, but the idea that lead counsel represents us, I don't know whether that's true in the aggregate or whatever, but when the question is coverage, lead counsel can't possibly represent us and our policyholder. Like, that's not, that's impossible, right? And that's what's going on here. What's being arbitrated, what should be arbitrated is coverage. And then just on the merits. So real quick, approval by the insurance commissioner for arbitration provisions, as we point out in footnote 1 of our reply brief, that's not right. That does not apply to policies like this one that were negotiated outside of Wisconsin. And there is nothing in the direct action provision that suggests that the direct action has to be in court. And that would be utterly bizarre given Wisconsin's general rule that insurance claims can be arbitrated, because if that were true, it would mean that in a direct action, the non-policyholder would have greater rights than the policyholder. That can't possibly be right, because the direct action is just a, you're stepping into the shoes of the policyholder provision. So I think this court can decide the question on the merits, but at the very least the court should issue an order requiring the district court to allow us to follow our stay motion. Thank you, counsel. Thank you.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Nicole G. Berner